## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT MICHALSKI, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| WEBER INC., CHRISTOPHER SCHERZINGER, WILLIAM HORTON, MARLA KILPATRICK, KELLY D. RAINKO, ELLIOTT HILL, MARTIN MCCOURT, MELINDA R. RICH, JAMES C. STEPHEN, GOLDMAN SACHS & CO. LLC, BOFA SECURITIES, INC., J.P. MORGAN SECURITIES LLC, BMO CAPITAL MARKETS CORP., CITIGROUP GLOBAL MARKETS INC., UBS SECURITIES LLC, WELLS FARGO SECURITIES, LLC, KEYBANC CAPITAL MARKETS INC., ACADEMY SECURITIES, INC. CABRERA CAPITAL MARKETS LLC, SIEBERT WILLIAMS SHANK & CO., LLC, and TELSEY ADVISORY GROUP LLC, | |
| Defendants. | |

## CLASS ACTION COMPLAINT FOR VIOLATIONS
## OF THE FEDERAL SECURITIES LAWS

Plaintiff Robert Michalski ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Weber Inc. ("Weber" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Weber; and (c) review of other publicly available information concerning Weber.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Weber Class A common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's August 2021 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

2.      Weber is an outdoor cooking company that sells grills, smokers, grilling accessories, and solid fuel products across the world.

3.      On August 6, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 17,857,143 shares of Class A common stock at a price of $14.00 per share. The Company received proceeds of approximately $237.5 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used to effectuate certain reorganization transactions, for general corporate purposes, and to repay certain debts.

4.      On July 25, 2022, before the market opened, Weber announced its preliminary third quarter 2022 financial results, including net sales between $525 million and $530 million. The

1

Company expected to report a net loss, noting that "[p]rofitability was negatively impacted by" several factors, including "promotional activity to enhance retail sell through." Additionally, Weber announced that Chris Scherzinger "is departing" from his roles as Chief Executive Officer and director of the Company.

5.      On this news, the Company's stock price fell $1.21 per share, or 16%, to close at $6.30 per share on July 25, 2022, on unusually heavy trading volume.

6.      By the commencement of this action, the Company's stock was trading as low as $6.25 per share, a nearly 55% decline from the $14 per share IPO price.

7.      The Registration Statement was materially false and misleading and omitted to state: (1) that Weber was reasonably likely to implement price increases; (2) that, as a result, consumer demand for Weber's products was reasonably likely to decrease; (3) that, due to the resulting inventory buildup, Weber was reasonably likely to run promotions to "enhance retail sell through"; (4) that the foregoing would adversely impact Weber's financial results; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13. Plaintiff Robert Michalski, as set forth in the accompanying certification, incorporated by reference herein, purchased Weber Class A common stock pursuant or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant Weber is incorporated under the laws of the Delaware with its principal executive offices located in Palatine, Illinois. Weber's Class A common stock trades on the New York Stock Exchange ("NYSE") under the symbol "WEBR."

15. Defendant Christopher Scherzinger ("Scherzinger") was, at all relevant times, the Chief Executive Officer ("CEO") of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16. Defendant William Horton ("Horton") was, at all relevant times, the Chief Financial Officer ("CFO") of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17. Defendant Marla Kilpatrick ("Kilpatrick") was, at all relevant times, Chief Accounting Officer of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18.     Defendant Kelly D. Rainko ("Rainko") was, at all relevant times, a director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19.     Defendant Elliott Hill ("Hill") was, at all relevant times, a director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20.     Defendant Martin McCourt ("McCourt") was, at all relevant times, a director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21.     Defendant Melinda R. Rich ("Rich") was, at all relevant times, a director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22.     Defendant James C. Stephen ("Stephen") was, at all relevant times, a director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

23.     Defendants Scherzinger, Horton, Kilpatrick, Rainko, Hill, McCourt, Rich, and Stephen are collectively referred to hereinafter as the "Individual Defendants."

24.     Defendant Goldman Sachs & Co., LLC ("Goldman Sachs") served as an underwriter for the Company's IPO. In the IPO, Goldman Sachs agreed to purchase 5,357,143 shares of the Company's common stock, exclusive of the over-allotment option.

25.     Defendant BofA Securities, Inc. ("BofA") served as an underwriter for the Company's IPO. In the IPO, BofA agreed to purchase 5,357,143 shares of the Company's Class A common stock, exclusive of the over-allotment option.

26. Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO. In the IPO, J.P. Morgan agreed to purchase 2,678,572 shares of the Company's Class A common stock, exclusive of the over-allotment option.

27. Defendant BMO Capital Markets Corp. ("BMO") served as an underwriter for the Company's IPO. In the IPO, BMO agreed to purchase 937,500 shares of the Company's Class A common stock, exclusive the over-allotment option.

28. Defendant Citigroup Global Markets Inc. ("Citigroup") served as an underwriter for the Company's IPO. In the IPO, Citigroup agreed to purchase 937,500 shares of the Company's Class A common stock, exclusive of the over-allotment option.

29. Defendant UBS Securities LLC ("UBS") served as an underwriter for the Company's IPO. In the IPO, UBS agreed to purchase 937,500 shares of the Company's Class A common stock, exclusive of the over-allotment option.

30. Defendant Wells Fargo Securities, L.L.C. ("Wells Fargo") served as an underwriter for the Company's IPO. In the IPO, Wells Fargo agreed to purchase 937,500 shares of the Company's Class A common stock, exclusive of the over-allotment option.

31. Defendant KeyBanc Capital Markets Inc. ("KeyBanc") served as an underwriter for the Company's IPO. In the IPO, KeyBanc agreed to purchase 321,429 shares of the Company's Class A common stock, exclusive of the over-allotment option.

32. Defendant Academy Securities, Inc. ("Academy") served as an underwriter for the Company's IPO. In the IPO, Academy agreed to purchase 98,214 shares of the Company's Class A common stock, exclusive of the over-allotment option.

33. Defendant Cabrera Capital Markets LLC ("Cabrera") served as an underwriter for the Company's IPO. In the IPO, Cabrera agreed to purchase 98,214 shares of the Company's Class A common stock, exclusive of the over-allotment option.

34. Defendant Siebert Williams Shank & Co., LLC ("Siebert Williams") served as an underwriter for the Company's IPO. In the IPO, Siebert Williams agreed to purchase 98,214 shares of the Company's Class A common stock, exclusive of the over-allotment option.

35. Defendant Telsey Advisory Group LLC ("Telsey") served as an underwriter for the Company's IPO. In the IPO, Telsey agreed to purchase 98,214 shares of the Company's Class A common stock, exclusive of the over-allotment option.

36. Defendants Goldman Sachs, BofA, J.P. Morgan, BMO, Citigroup, UBS, Wells Fargo, KayBanc, Academy, Cabrera, Siebert Williams, and Telsey are collectively referred to hereinafter as the "Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Weber Class A common stock issued in connection with the Company's IPO. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

38. The members of the Class are so numerous that joinder of all members is impracticable. Nearly 17.9 million shares were sold in the IPO. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records

maintained by Weber or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

41.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether the Registration Statement omitted and/or misrepresented material facts about the business, operations, and prospects of Weber; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

43.     Weber is an outdoor cooking company that sells grills, smokers, grilling accessories, and solid fuel products across the world.

### The Company's False and/or Misleading
### Registration Statement and Prospectus

44.     On July 12, 2021, the Company filed its Registration Statement on Form S-1 with the SEC, which forms part of the Registration Statement.

45.     On July 27, 2021, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on August 4, 2021.

46.     On August 6, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 17,857,143 shares of Class A common stock at a price of $14.00 per share. The Company received proceeds of approximately $237.5 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used to effectuate certain reorganization transactions, for general corporate purposes, and to repay certain debts.

47.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

48.     Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

49.     The Registration Statement touted Weber's "stable revenue growth, solid profitability, and consistent high cash flow generation," stating[1] in relevant part:

> Our compelling financial profile is characterized by **stable revenue growth, solid profitability and consistent high cash flow generation.**
>
> Comparing our six months ended March 31, 2021 with six months ended March 31, 2020, we achieved the following results:
>
> - Increase in revenue from $596.4 million to $963.3 million, **representing year-over-year growth of 62%**;
>
> - Increase in income from operations from $56.4 million to $120.9 million, representing year-over-year growth of 114%;
>
> - Increase in **net income from $23.6 million to $73.8 million, representing year-over-year growth of 213%;**
>
> - Increase in adjusted income from operations from $58.3 million to $161.1 million, representing year-over-year growth of 176%;
>
> - Increase in adjusted net income from $30.6 million to $111.1 million, representing year-over-year growth of 263%;
>
> - Increase in EBITDA from $69.0 million to $141.3 million, representing year-over-year growth of 105%; and
>
> - Increase in Adjusted EBITDA from $77.0 million to $186.9 million, representing year-over-year growth of 143%.

50.     The Registration Statement stated that Weber expected continued growth, stating in relevant part:

> We will continue to grow based on the increasing number of first-time grill buyers; consumers purchasing second grills with a different fuel type; heightened demand for specialty grills such as smokers, pellet grills, electric grills and kamado grills; and additional revenue streams including accessories, consumables and grill services.

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

51.     Weber purportedly experienced a "long track record of strong growth and resilient financial performance" to withstand macroeconomic pressures. According to the Registration Statement:

**Exceptional Financial Profile Through Business Cycles**

Weber has a ***long track record of strong growth and resilient financial performance, through periods of varying macro-economic cycles***. Our growth has been broad-based across product categories and geographies. Weber benefits from countercyclical trends associated with "eat at home" categories, where challenging economic periods lead families to cook and spend more time at home. However, Weber also thrives in strong economic times when disposable income and investments in and around the home and backyard are strong. ***Our business maintains a strong margin profile driven by our consistent premium pricing strategy, global scale, vertically integrated manufacturing capabilities, operational productivity programs and commitment to value-added product innovations.*** We are well positioned to continue to execute on our operational excellence initiatives, including our new manufacturing and distribution facility in Poland. Our resilient growth, margin improvement and efficient capital intensity all contribute to our strong free cash flow. Our strong free cash flow profile allows for significant capital allocation flexibility, enabling long-term shareholder value creation through multiple operating and financial strategies.

52.     The Registration Statement purported to warn that Weber "could" be harmed if it failed to adequately forecast demand and manage product inventory, stating in relevant part:

***Our results of operations could be materially harmed if we are unable to accurately forecast demand for our products and manage product inventory in an effective and efficient manner.***

To ensure adequate inventory supply, we must forecast inventory needs and place orders with our manufacturers before firm orders are placed by our customers. If we fail to accurately forecast customer demand, we may experience excess inventory levels or a shortage of product to deliver to our customers. ***Factors that could affect our ability to accurately forecast demand for our products include***: (a) an increase or decrease in consumer demand for our products; (b) a failure to accurately forecast consumer acceptance for our new products; (c) product introductions by competitors; (d) unanticipated changes in general market conditions or other factors, which may result in cancellations of advance orders or a reduction or increase in the rate of reorders or at-once orders placed by retailers; (e) the impact on consumer demand due to unseasonable weather conditions; (f) ***weakening of economic conditions or consumer confidence in future economic conditions, which could reduce demand for discretionary items, such as our products;*** (g) the uncertainties and logistical challenges that accompany operations

on a global scale; and (h) terrorism or acts of war, or the threat thereof, or political or labor instability or unrest, civil unrest, riots or insurrections, public health crises such as the current COVID-19 pandemic (or other future pandemics or epidemics), which could adversely affect consumer confidence and spending or interrupt production and distribution of product and raw materials.

Inventory levels in excess of customer demand may result in inventory write-downs or write-offs, and ***the sale of excess inventory at discounted prices or in less preferred distribution channels, which could impair our brand image and harm our gross margin.*** In addition, if we underestimate the demand for our products, our contract manufacturers or our manufacturing plants may not be able to produce products to meet our customer requirements, and this could result in delays in the shipment of our products, therefore impacting our ability to recognize revenue, generate lost sales, and cause damage to our reputation and relationships with our consumers, retailers and distributors.

Challenges in forecasting demand, which we have encountered during the COVID-19 pandemic, can also make it difficult to estimate future results of operations and financial condition from period to period. ***A failure to accurately predict the level of demand for our products or manage product inventory in an effective and efficient manner could adversely impact our profitability or cause us not to achieve our expected financial results.***

(First emphasis in original.)

53.     The Registration Statement was materially false and misleading and omitted to state: (1) that Weber was reasonably likely to implement price increases; (2) that, as a result, consumer demand for Weber's products was reasonably likely to decrease; (3) that, due to the resulting inventory buildup, Weber was reasonably likely to run promotions to "enhance retail sell through"; (4) that the foregoing would adversely impact Weber's financial results; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

### The Subsequent Disclosures

54.     On July 25, 2022, before the market opened, Weber announced its preliminary third quarter 2022 financial results, including net sales between $525 million and $530 million. The company expected to report a net loss, noting that "[p]rofitability was negatively impacted by"

several factors, including "promotional activity to enhance retail sell through." Additionally, Weber announced that Defendant Scherzinger "is departing" from his roles as Chief Executive Officer and director of the Company.

55.     On this news, the Company's stock price fell $1.21 per share, or 16%, to close at $6.30 per share on July 25, 2022, on unusually heavy trading volume.

56.     By the commencement of this action, the Company's stock was trading as low as $6.25 per share, a nearly 55% decline from the $14 per share IPO price.

## FIRST CLAIM

### Violation of Section 11 of the Securities Act

### (Against All Defendants)

57.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

58.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

59.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

60.     Weber is the registrant for the IPO.  The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

61.     As issuer of the shares, Weber is strictly liable to Plaintiff and the Class for the misstatements and omissions.

62.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

63.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

64.     Plaintiff acquired Weber shares pursuant and/or traceable to the Registration Statement for the IPO.

65.     Plaintiff and the Class have sustained damages.  The value of Weber shares has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM

### Violation of Section 15 of the Securities Act

### (Against the Individual Defendants)

66.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

67.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

68.     The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Weber within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence and exercised the same to cause Weber to engage in the acts described herein.

69.     The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

70.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 29, 2022

By:  /s/ *Marvin A. Miller*
Marvin A. Miller
**MILLER LAW LLC**
145 S. Wells Street, 18th Floor
Chicago, IL 60606
Telephone: (312) 332-3400
mmiller@millerlawllc.com


Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Robert Michalski*

14

**SWORN CERTIFICATION OF PLAINTIFF**
**WEBER INC. (WEBR) SECURITIES LITIGATION**

I, Robert Michalski, certify that:

1.      I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2.      I did not purchase the Weber Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in Weber Inc. securities during the period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

7/27/2022
_____
Date

_____
Robert Michalski

**Robert Michalski's Transactions in Weber Inc. (WEBR)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 5/10/2022 | Bought | 367 | $7.2900 |