UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT MICHALSKI, Individually and on Behalf of All Others Similarly Situated, <br><br>        Plaintiff, <br><br>    v. <br><br> WEBER INC., CHRISTOPHER SCHERZINGER, WILLIAM HORTON, MARLA KILPATRICK, KELLY D. RAINKO, ELLIOTT HILL, MARTIN MCCOURT, MELINDA R. RICH, JAMES C. STEPHEN, SUSAN T. CONGALTON, MAGESVARAN SURANJAN, GOLDMAN SACHS & CO. LLC, BOFA SECURITIES, INC., J.P. MORGAN SECURITIES LLC, BMO CAPITAL MARKETS CORP., CITIGROUP GLOBAL MARKETS INC., UBS SECURITIES LLC, WELLS FARGO SECURITIES, LLC, KEYBANC CAPITAL MARKETS INC., ACADEMY SECURITIES, INC., CABRERA CAPITAL MARKETS LLC, SIEBERT WILLIAMS SHANK & CO., LLC, TELSEY ADVISORY GROUP LLC, and BDT CAPITAL PARTNERS, LLC, <br><br>        Defendants. | Case No. 1:22-CV-03966 <br> Honorable Elaine E. Bucklo |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

## TABLE OF CONTENTS

PAGE(S)

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...........................................................................................................................3

I.     PLAINTIFF HAS FAILED TO ALLEGE AN ACTIONABLE MISSTATEMENT OR
OMISSION .....................................................................................................................3

     A.  Weber Disclosed the Trends and Risks that Plaintiff Claims It Omitted .....................3

     B.  Plaintiff's Claims Rest on a Misunderstanding of the Data on Which They Are
Based.......................................................................................................................7

     C.  Weber Had No Duty to Disclose the Third-Party Replacement Rate Data .................8

II.    PLAINTIFF'S CLAIMS FAIL FOR ADDITIONAL, INDEPENDENT REASONS ......12

     A.  Each of the Alleged Misstatements is a Non-Actionable Opinion .............................12

     B.  Each of the Alleged Misstatements is Protected by the Bespeaks Caution
Doctrine..................................................................................................................14

     C.  Each of the Challenged Disclosures Was a Classic Expression of Inactionable
Corporate Optimism................................................................................................15

III.   PLAINTIFF'S CLAIMS UNDER ITEMS 303 AND 105 ALSO FAIL .........................16

IV.   PLAINTIFF'S SECTION 15 CLAIMS FAIL BECAUSE HE HAS NOT STATED AN
UNDERLYING CLAIM FOR SECURITIES FRAUD ..................................................18

CONCLUSION........................................................................................................................19

i

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

*Agnew v. NCAA,*
683 F.3d 328 (7th Cir. 2012) ............................................................................ 8

*Brody v. Transitional Hosps. Corp.,*
280 F.3d 997 (9th Cir. 2002) ............................................................................ 9

*Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp.,*
2018 WL 1071442 (N.D. Ill. Feb. 27, 2018) .................................................. 13

*Cincinnati Ins. Co. v. E. Atl. Ins. Co.,*
260 F.3d 742 (7th Cir. 2001) ............................................................................ 5

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.,*
388 F. Supp. 2d 932 (S.D. Ind. 2005) ............................................................. 9

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.,*
450 F. Supp. 3d 379 (S.D.N.Y. 2020) ........................................................... 14

*City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.,*
8 F.4th 592 (7th Cir. 2021) ............................................................................ 16

*Constr. Workers Pension Fund Lake Cnty. & Vicinity v. Navistar Int'l Corp.,*
114 F. Supp. 3d 633 (N.D. Ill. 2015) ........................................................... 8-9

*In re Dentsply Sirona, Inc. Sec. Litig.,*
2023 WL 2682905 (E.D.N.Y. Mar. 29, 2015) .............................................. 11

*In re Dynagas LNG Partners LP Sec. Litig.,*
504 F. Supp. 3d 289 (S.D.N.Y. 2020) ........................................................... 12

*In re Facebook, Inc. IPO Sec. & Derivative Litig.,*
986 F. Supp. 2d 487 (S.D.N.Y. 2013) ........................................................... 17

*In re FBR Inc. Sec. Litig.,*
544 F. Supp. 2d 346 (S.D.N.Y. 2008) ........................................................... 10

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.,*
336 F. Supp. 3d 196 (S.D.N.Y. 2018) ........................................................... 12

*Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.,*
2010 WL 601364 (E.D. Wis. Feb. 18, 2010) .................................................. 8

*Garnett v. RLX Tech. Inc.,*
632 F. Supp. 3d 574 (S.D.N.Y. 2022) ............................................................. 6

*In re GoHealth, Inc. Sec. Litig.*,
  2022 WL 1016389 (N.D. Ill. Apr. 5, 2022) ........................................................ 17

*Golubowski v. Robinhood Mkts., Inc.*,
  2023 WL 1927616 (N.D. Cal. Feb. 10, 2023) ..................................................... 17

*Gregory v. ProNAi Therapeutics Inc.*,
  297 F. Supp. 3d 372 (S.D.N.Y. 2018) ................................................................ 12

*Harden v. Raffensperger, Hughes & Co.*,
  65 F.3d 1392 (7th Cir. 1995) ............................................................................. 14

*In re HealthCare Compare Corp. Sec. Litig.*,
  75 F.3d 276 (7th Cir. 1996) ................................................................................. 6

*In re Heartland Payment Sys., Inc. Sec. Litig.*,
  2009 WL 4798148 (D.N.J. Dec. 7, 2009) ............................................................. 6

*In re Honest Co. Sec. Litig.*,
  615 F. Supp. 3d 1149 (C.D. Cal. 2022) .............................................................. 10

*Kirksey v. R.J. Reynolds Tobacco Co.*,
  168 F.3d 1039 (7th Cir. 1999) .......................................................................... 4-5

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
  513 F.3d 702 (7th Cir. 2008) ............................................................................. 14

*Mingbo Cai v. Switch, Inc.*,
  2019 WL 3065591 (D. Nev. July 12, 2019) ........................................................ 17

*Murphy v. Precision Castparts Corp.*,
  2017 WL 3084274 (D. Or. June 27, 2017) .......................................................... 11

*Nayani v. LifeStance Health Grp., Inc.*,
  2023 WL 3260260 (S.D.N.Y. May 4, 2023) ........................................................ 10

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
  367 F. Supp. 3d 16 (S.D.N.Y. 2019) .................................................................. 11

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ................................................................................... *passim*

*Pirani v. Slack Techs., Inc.*,
  445 F. Supp. 3d 367 (N.D. Cal. 2020) ............................................................... 17

*Quinones v. Frequency Therapeutics, Inc.*,
  2023 WL 2693901 (D. Mass. Mar. 29, 2023) ..................................................... 12

*Robeco Glob. Consumer Trends v. Peloton Interactive, Inc.*,
  2023 WL 2711342 (S.D.N.Y. Mar. 30, 2023) ....................................................... 6

*Searls v. Glasser*,
  64 F.3d 1061 (7th Cir. 1995) ................................................................ 16

*Stavros v. Exelon Corp.*,
  266 F. Supp. 2d 833 (N.D. Ill. 2003) ..................................................... 14

*Susie Ong v. Chipotle Mexican Grill, Inc.*,
  2017 WL 933108 (S.D.N.Y. Mar. 8, 2017) ............................................ 17

*Takara Tr. v. Molex Inc.*,
  429 F. Supp. 2d 960 (N.D. Ill. 2006) ..................................................... 14

*Trahan v. Interactive Intel Grp., Inc.*,
  308 F. Supp. 3d 977 (S.D. Ind. 2018) .................................................... 10

*Vallabhaneni v. Endocyte, Inc.*,
  2016 WL 51260 (S.D. Ind. Jan. 4, 2016) ............................................... 12

*Van Noppen v. Innerworkings, Inc.*,
  136 F. Supp. 3d 922 (N.D. Ill. 2015) ..................................................... 15

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
  495 F. Supp. 3d 622 (N.D. Ill. 2020) ................................................ *passim*

## STATUTES & RULES

15 U.S.C. § 77(o)(a) .................................................................................. 18

15 U.S.C. § 77k(a) ...................................................................................... 9

Defendants respectfully submit this Reply Brief in further support of their Motion to Dismiss Plaintiff's Amended Complaint.[1]

## PRELIMINARY STATEMENT

Plaintiff's Opposition rests on a strikingly incomplete description of Weber's Registration Statement. Because Plaintiff concedes that there were no false statements in the Registration Statement, his case depends entirely on his contention that three generalized statements reflecting Weber's expectations and beliefs about its future prospects were somehow false or misleading by omission.[2] But he supports his omissions theory by focusing only on isolated and selective quotations, disregarding many of the most obviously relevant portions of the Registration Statement. Plaintiff fails to address—and in some cases completely ignores—detailed risk factors that thoroughly disclosed the very pieces of information that Plaintiff implies Weber omitted, including the specific risk that the Company's COVID-era growth in 2020 and 2021 may not be sustainable. In context, there was nothing even remotely misleading about the challenged statements.

The Opposition also has no explanation for the basic analytical flaw that undermines the core premise of the Complaint. Plaintiff's omissions theory depends on one key assumption: that certain third-party data about Weber's sales—data published *after* the IPO—was inconsistent with information in Weber's Registration Statement. But as the Motion explained, the Complaint relies on an obvious misreading of the publication in which Plaintiff found this

---

[1] This Reply refers to Defendants' Memorandum of Law in support of their Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 81) as the "Motion" or "Mot." and Plaintiff's Memorandum of Law in Opposition to the Motion (ECF No. 85) as the "Opposition" or "Opp." References to "Ex. A" and "Ex. B" are to the exhibits to the Declaration of Brian M. Burnovski in support of the Motion (ECF 80-1, ECF 80-2). Any capitalized terms not defined herein have the same meaning as in the Motion.

[2] Plaintiff's Opposition does not address and therefore abandons any claims based on the "Risk Disclosures," as defined in the Motion. *See* Mot. at 11. The only allegedly misleading statements that remain are, therefore, the three statements that the Motion referred to as the "Trend Disclosures." *Id.*

information.  The Complaint therefore mistakenly makes an apples-to-oranges comparison of two totally different metrics that provides no support for Plaintiff's theory.  The Opposition does not seriously address this error.  Instead, after briefly conceding that the metrics are indeed different (while ignoring the theory pled in the Complaint), Plaintiff tries to pivot to a different theory.  He argues that the Registration Statement's disclosure of one metric (percentage of existing U.S. grills that are replaced each year) was somehow misleading because the Registration Statement did not also disclose a wholly different metric (percentage of global sales that were replacement grills).  But this theory is just as flawed.  There was nothing misleading about the Registration Statement's actual disclosures of concededly accurate data.  Nor was there anything that otherwise would have called for disclosure of some other, wholly different metric.  In fact, Plaintiff has still offered no plausible basis beyond sheer speculation to suggest that, at the time of the IPO, Weber even had the third-party data that postdates the IPO that forms the basis for his claims.

Separately, the Opposition barely addresses the additional, independent bases for dismissal of Plaintiff's claims.  All of the challenged statements are vague and general statements of opinion about the ways in which market trends and consumer behavior could affect Weber's business going forward.  The relevant statements all therefore separately qualify as (1) inactionable opinions under *Omnicare*, (2) inactionable forward-looking statements protected by the bespeaks caution doctrine, and (3) inactionable corporate optimism or puffery.  Each of these doctrines provides an independent basis to dismiss the Complaint in its entirety.

Unable to rebut these independent bases to dismiss, Plaintiff oddly devotes several pages of his Opposition to unsupported assertions about Defendant BDT's alleged motives.  Any assertion that the events alleged in the Complaint somehow benefited BDT are not true, but—in any event—this entire narrative is irrelevant to the issue before the Court on this Motion:

whether Plaintiff has pled a Section 11 claim. Because he has not—and cannot—the Complaint should be dismissed with prejudice.

## ARGUMENT

## I. PLAINTIFF HAS FAILED TO ALLEGE AN ACTIONABLE MISSTATEMENT OR OMISSION

### A. Weber Disclosed the Trends and Risks that Plaintiff Claims It Omitted

In the Motion, Defendants identified in detail all of the disclosures in the Registration Statement that warned investors that Weber's unprecedented sales growth buoyed by the pandemic may not be replicable. *See* Mot. at 5–6. In light of Weber's disclosure to investors of the very trends and risks that Plaintiff claims were omitted—in both words (*e.g.*, Ex. A at 36, 42, 108, 129) and data (*e.g.*, *id.* at 103–06)—there was nothing misleading about the relevant statements in the Registration Statement. Plaintiff's securities claims must therefore be dismissed for failure to state a claim. *See* Mot. at 12 (collecting cases).

The Registration Statement told investors plainly that Weber's recent performance had benefited from pandemic-related trends and that its performance may not be sustainable. It did so with risk disclosures that cautioned investors generally that past results did not guarantee future performance (*see, e.g.*, Ex. A at 41 ("Past growth may not be indicative of future growth")), as well as other disclosures that pinpointed exactly the information about COVID-related growth (and the sustainability of that growth) that Plaintiff now claims was concealed, including that (1) "we have experienced higher demand . . . as a result of the COVID-19 pandemic," but that "***such growth may not be sustainable and may not be repeated in future periods***" (*id.* at 42) (emphasis added), and (2) "[t]he economic effects of the COVID-19

pandemic could continue to affect demand for our products in the foreseeable future" (*id.* at 108).[3]

In his Opposition, Plaintiff mostly ignores these robust disclosures. The Opposition puzzlingly asserts that Weber "said nothing" about the potential for its sales to decline post-COVID (Opp. at 12 (citing AC ¶ 113)), even though that is obviously wrong because the Registration Statement specifically addressed the potential for that very type of sales erosion (Ex. A at 42, 108). Of the nearly two dozen different disclosures that Weber highlighted in its Motion, Plaintiff's Opposition fails to mention more than half of them—and does not address the substance or impact of the few that it does acknowledge. Opp. at 12–13. In fact, two of the disclosures that Plaintiff now ignores completely are statements that Plaintiff himself had previously alleged in his Complaint to be false or misleading: specifically, Weber's statements that: (1) "[a] failure to accurately predict the level of demand for our products or manage product inventory in an effective and efficient manner could adversely impact our profitability or cause us not to achieve our expected financial results" (AC ¶ 111); and (2) "[w]hile we have experienced higher demand in our grill business as consumers sheltered in place and have spent more time at home as a result of the COVID-19 pandemic, such growth may not be sustainable and may not be repeated in future periods" (*id.* ¶ 112). Not only is there nothing misleading about those statements—as Plaintiff apparently now concedes by dropping his challenge to them[4]—but each of these disclosures warned precisely of what Plaintiff claims to have been omitted (Mot. at 11).

---

[3] *See also id.* at 38–39 ("Challenges in forecasting demand, which we have encountered during the COVID-19 pandemic, can also make it difficult to estimate future results of operations and financial condition . . . . A failure to accurately predict the level of demand for our products" could "cause us not to achieve our expected financial results."); Mot. at 4–7, 12–14 (collecting disclosures).

[4] In failing to address or defend his claims based on the Risk Disclosures, Plaintiff has abandoned any claim that they were misleading. *See, e.g., Kirksey v. R.J. Reynolds Tobacco Co.,*

4

Plaintiff also fails to acknowledge, let alone address, numerous other disclosures in the Registration Statement, including many of the explicit risks—as to, among other things, global economic volatility and uncertainty, consumer trends and spending, and difficulties in forecasting—that Weber made clear might impact its performance. *See, e.g.*, *id.* at 2, 5–7, 21 (citing, *inter alia*, Ex. A at 19, 41, 43). Plaintiff also completely ignores numerous COVID-specific disclosures both about the sales increase—e.g., "the pandemic accelerated certain trends that benefited our industry . . . ." (Ex. A at 16)—and also the numerous ways in which the results and aftereffects of COVID-19 could negatively and/or unpredictably impact Weber's growth prospects moving forward—*see, e.g.*, Mot. at 6 (citing Ex. A at 108 (describing how COVID was "heightening many of the risks described in 'Risk Factors' in this prospectus")); Mot. at 6 (citing Ex. A at 41, 108 (explaining the possibility of the pandemic "exacerbat[ing]" risks related to, among other things, "acquir[ing] new customers" and "retain[ing] existing customers," and how the "[t]he economic effects of the COVID-19 pandemic could continue to affect demand for our products in the foreseeable future")).[5]

For the handful of disclosures that Plaintiff does cite, he offers only the bare assertion, unsupported by analysis or explanation, that they are irrelevant because they are "irreconcilable" with the alleged misrepresentations. Opp. at 12–13. But there is nothing even remotely inconsistent, much less irreconcilable, about advancing opinions about consumer trends in

---

168 F.3d 1039, 1041 (7th Cir. 1999) (collecting Seventh Circuit cases and explaining that "[a]n unresponsive response is no response" and affirming dismissal where "[i]n effect the plaintiff was [rightly] defaulted" for failing to oppose "plausible reasons for dismissing a complaint"); *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (holding that failure to oppose a meritorious argument equates to acquiescence to an opponent's interpretation, which "operates as a waiver").

[5] Plaintiff ignores other meaningful disclosures about the challenges to "sustain[ing] growth" (Mot. at 5–6 (citing Ex. A at 19)) and the "business, economic and competitive uncertainties and contingencies" that Weber acknowledged could impact its growth initiatives (Mot. at 21 (citing Ex. A at 41)).

Weber's industry and high-level perspectives as to how those trends might impact Weber's business on the one hand, while simultaneously warning that the trends may not materialize to any particular level of growth or that they may not persist after the pandemic at all, on the other. *See, e.g.*, *In re Heartland Payment Sys., Inc. Sec. Litig.*, 2009 WL 4798148, at *5 (D.N.J. Dec. 7, 2009)* (holding that there was "nothing inconsistent" when a company made optimistic statements about the strength of its security, while simultaneously warning investors of security risks); *Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 609–10 (S.D.N.Y. 2022)* (holding that cautionary statements that "repeatedly warn[] of the specific contingency that lies at the heart of the alleged misrepresentation" prevent any reasonable investor from "suppos[ing] . . . that the future is settled, or unattended by contingency" (internal quotation marks omitted)); *see also In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 281 (7th Cir. 1996)* ("Projections which turn out to be inaccurate are not fraudulent simply because subsequent events reveal that a different projection would have been more reasonable"); *see also* Mot. at 20 n.4. Notwithstanding Plaintiff's argument to the contrary (Opp. at 14), this same logic is precisely why a court recently held that strikingly similar claims against exercise-bike manufacturer Peloton's disclosures also fail: because they likewise coupled statements expressing an expectation of "continued momentum" with warnings that rapid demand resulting from COVID may not be sustainable. *See Robeco Cap. Growth Funds SICAV – Robeco Glob. Consumer Trends v. Peloton Interactive, Inc.*, 2023 WL 2711342, at *4, *15 (S.D.N.Y. Mar. 30, 2023)*.

Plaintiff does not dispute the well-settled law that a court must review disclosures in their entirety when considering whether a statement is false or misleading. *E.g.*, *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015)* (statement or omission actionable only if "misleading to a reasonable person reading the statement fairly and in context"). Here, there is no doubt that, when read holistically and with its various disclosures

and cautionary statements taken together in context, the Registration Statement amply disclosed precisely what Plaintiff claims it omitted.

### B.   Plaintiff's Claims Rest on a Misunderstanding of the Data on Which They Are Based

In the Complaint, Plaintiff alleged multiple times that Weber misled investors by failing to disclose a ten-fold spike in replacement sales.  *See, e.g.*, AC ¶ 6 ("***Historically, these 'replacement purchases' accounted for approximately 6.67% of Weber's overall sales*** but ***"[i]n 2020 and 2021 . . . these 'replacement purchases' comprised between 60% and 70% of overall sales***." (emphasis added)); *see also, e.g.*, *id.* ¶ 100.

But as explained in the Motion (including in Appendix A (ECF No. 81-1)), this theory of the case rested on a misreading of the third-party publication where Plaintiff found the figure cited in the Complaint.  As a result, the Complaint reflected a meaningless comparison of completely different metrics, with entirely different numerators and denominators: (1) replacement Weber grills sold domestically as a percentage of grills already installed in the U.S. (6.67%) and (2) the percentage of Weber grills sold worldwide that were replacing an existing Weber grill (purportedly 60-70%).  *See* Mot. at 14–15.  Because of this difference, the comparison is meaningless and provides no support for the Complaint.

 In the Opposition, Plaintiff now does not dispute that these are different metrics that measure different things and thus appears to concede his error.  Stripped of any factual support, he also makes no attempt now to support the core theory on which he based his Complaint: he no longer suggests the figures can or should be directly compared.  That concession should be fatal to his claims because it undermines any attempt to "connect the dots" between the disclosures and the information allegedly omitted.  *See id.* at 15–16 (citing *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 651 (N.D. Ill. 2020), *aff'd sub nom.*

*Nat'l Elevator Indus. Pension Fund v. Conagra Brands Inc.*, 2022 WL 1449184 (7th Cir. May 9, 2022)).

### C.  Weber Had No Duty to Disclose the Third-Party Replacement Rate Data

Seeking to move past his erroneous comparison of two different metrics, Plaintiff now contends that the Registration Statement should nonetheless have disclosed the post-IPO data on replacement sales—or perhaps some other unspecified data.  Plaintiff's assertion here appears to rest on a brand-new contention, advanced for the first time in his Opposition, that the concededly accurate numbers that Weber did disclose in the Registration Statement on its U.S. replacement rate were somehow misleading by omission.  According to Plaintiff, having disclosed data on the domestic grill replacement rate, Weber necessarily took on the obligation to disclose the third-party, post-IPO data on global replacement sales in the Registration Statement.  Opp. at 7–8.

This new assertion fails for multiple reasons.  The first is procedural: Plaintiff may not re-amend the Complaint in an opposition brief.  *See Agnew v. NCAA*, 683 F.3d 328, 348 (7th Cir. 2012) (asserting the "basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss" (internal quotation marks omitted)).  But beyond that, the new theory is even more flawed on a substantive level.

The chief defect is that it wrongly asserts that Weber's disclosure of a concededly accurate domestic replacement rate of 6.67% is somehow misleading on its face.  It is well-established—and Plaintiff does not dispute—that there is no abstract duty to disclose every shred of conceivable information.  *See Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*, 2010 WL 601364, at *17 (E.D. Wisc. Feb. 18, 2010), *aff'd sub nom. Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*, 675 F.3d 1047 (7th Cir. 2012) (no duty to disclose information "merely because a reasonable investor would very much like to know" it (internal quotation marks omitted)); *see also Constr. Workers Pension Fund-Lake Cnty. & Vicinity v. Navistar Int'l Corp.*, 114 F. Supp.

8

3d 633, 647–49 (N.D. Ill. 2015) ("Merely mentioning a topic . . . does not require the company to disclose every tangentially related fact that might interest investors." (internal quotation marks omitted)); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("No matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not."). Rather, to plead an actionable omission where there is no duty to disclose imposed by statute or regulation, Plaintiff must allege that some statement *that a defendant actually made* is misleading by omission. *See* 15 U.S.C. § 77k(a); *Omnicare,* 575 U.S. at 194; *see also City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932, 945–46 (S.D. Ind. 2005) (finding disclosure not misleading where plaintiff did not adequately explain how allegedly omitted information rendered the actual statement misleading). And here, there is nothing misleading about this replacement-rate metric—particularly in view of the disclosures in their entirety, including the stark risks described above (*see supra* Section I.A)—such that Weber would have needed to disclose some other wholly different metric. Plaintiff cites no support for such a proposition, and there is none.

Nor is there any basis to suggest that the accurate figure Weber provided concerning its U.S. replacement rate somehow implicitly telegraphed that Weber's global replacement sales were an insignificant part of its business. *See* Opp. at 15–16. Setting aside that this is the same apples-to-oranges comparison of different metrics, Plaintiff's theory again ignores explicit statements in the Registration Statement that directly undermine it. Throughout the Registration Statement, including on the very first page, Weber affirmatively disclosed to investors that its replacement sales made up a significant part of its business. Ex. A at 1, 106, 143 (describing Weber's "grilling enthusiasts" and "brand loyalists" as a selling point of its business model). Even more specifically, in its description of its "Competitive Strengths," Weber identified its "Massive Community of Loyal Weber Enthusiasts," which created "a powerful recurring

revenue model through repeat grill sales." _Id._ at 9–10.  In an explicit nod to the importance of these replacement sales going forward, Weber further disclosed its efforts and initiatives aimed at "maximiz[ing] purchase frequency." _Id._ at 10.  No reasonable investor could have viewed such statements to mean "that replacement purchases were relatively unimportant" to Weber's business.[6] Opp. at 4.  When viewing the Registration Statement in its entirety, Plaintiff's theory is completely illogical.  _See_ _In re FBR Inc. Sec. Litig._, 544 F. Supp. 2d 346, 360 (S.D.N.Y. 2008) (holding that certain statements were not misleading when plaintiffs' theory was "without substance," and "[a] reasonable investor would understand" the allegedly omitted detail "from even the barest modicum of common sense"); _accord_ Mot. at 17 (citing _Trahan v. Interactive Intel Grp., Inc._, 308 F. Supp. 3d 977, 991 (S.D. Ind. 2018)).

Plaintiff's reference to a "well-settled body of case law" that supposedly mandated additional disclosures in this instance fails to take into account that, among other things, he cited no authority supporting the proposition that an issuer's disclosure of one metric requires disclosure of a wholly different metric it has never before disclosed.  All of Plaintiff's cited cases are distinguishable on this basis alone.  _See_ Opp. at 8–9.  Indeed, in _In re Honest Co. Sec. Litig._, 615 F. Supp. 3d 1149, 1156–57 (C.D. Cal. 2022) and _Nayani v. LifeStance Health Grp., Inc._, 2023 WL 3260260, at *2–3 (S.D.N.Y. May 4, 2023), plaintiffs' claims survived a motion to dismiss based on allegations that the issuer disclosed specific metrics or data points—and supporting trend analysis—while simultaneously omitting data they possessed that showed that

---

[6] Weber's statement that it was "not dependent on replacements" (Ex. A at 16)—which Plaintiff quotes in isolation for the first time in Opposition (Opp. at 15–16)—is not to the contrary.  Weber did have other revenue streams, including the "increasing number of first-time grill buyers; consumers purchasing second grills with a different fuel type; heightened demand for specialty grills . . . and additional revenue streams including accessories, consumables and grill services." _Id._  Especially in view of the balanced disclosures described above, there is nothing misleading about this isolated phrase.

the **same metric** was declining or otherwise not as favorable as they let on.[7]  As set forth in the

Motion and above, the metrics here are obviously not the same.  *See* Section I.B *supra* (citing

Mot. at 14-16 ).  And there is no dispute that the metric cited in the Registration Statement had

**not** meaningfully changed.  As noted in Defendants' Motion, the same analyst report Plaintiff

relies on (*e.g.*, AC ¶ 87) calculates Weber's global replacement rate to be "around 6%" in 2020,

within a percentage point of—**and in fact lower than**—the historical U.S. rate in the Registration

Statement (6.67%).  *See* Mot. at 15 (citing Ex. B at 6)); Appendix A (explaining calculations).

Plaintiff's Opposition ignores this fact too.

　　　　In any event, even if Plaintiff could allege that any statement in the Registration

Statement was misleading by omission—which he cannot—Plaintiff cannot plead that Weber

even had the data underlying the different metric in the analyst report that he is claiming Weber

should have disclosed.  The proportional global replacement sale statistic Plaintiff repeats again

and again came from third-party research published by UBS, not Weber.  *See* AC ¶¶ 74, 96.

Plaintiff does not allege any valid basis to infer that Weber had this information, even if it

---

[7] The other cases that Plaintiff cites (*see* Opp. at 8–9) are different in kind because they relate to situations where the issuer allegedly knew that its increased sales had little to do with end-user demand because those sales were driven by idiosyncratic factors unrelated to actual demand.  *See In re Dentsply Sirona, Inc. Sec. Litig.*, 2023 WL 2682905, at *14–15 (E.D.N.Y. Mar. 29, 2015) (finding statement about "strong" end-user demand misleading when sales were inflated by "minimum purchase requirements" as opposed to actual demand); *Murphy v. Precision Castparts Corp.*, 2017 WL 3084274, at *9 (D. Or. June 27, 2017) (finding that unsustainable accounting practice of "pulling in" early sales to "aggressively pursu[e] quarterly results" was inconsistent with representations about organic growth); *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 32 (S.D.N.Y. 2019) (finding that representation of strong end-user demand was inconsistent with inventory stuffing).  Here, regardless of the specific attributes of the end-users buying Weber's products, there is no dispute the demand for Weber's products had increased and Plaintiff has not alleged any accounting practices or contractual obligations that purportedly fueled inorganic growth.

conflicted with anything Weber disclosed (which it does not).[8]  *See infra* Part III; Mot. at 16–17, 16 n.2.

## II.  PLAINTIFF'S CLAIMS FAIL FOR ADDITIONAL, INDEPENDENT REASONS

### A.  Each of the Alleged Misstatements Is a Non-Actionable Opinion

As set forth in the Motion, each of the three challenged statements warrants dismissal for the additional, independent reason that they are clear statements of opinion or belief that are not actionable under the *Omnicare* framework.

Plaintiff first contends, in a single sentence with no support, that the alleged misstatements are not opinions ***at all.***  Opp. at 20.  This argument is, frankly, puzzling.  As Plaintiff concedes, each of the challenged statements "contain[s] the words 'we expect' and 'we believe.'"  *Id.*  The latter category—here, Weber's statement that it "believe[s] our industry will see continued resiliency" (Ex. A at 16)—reflects the classic phrasing of an opinion statement, as set forth in the *Omnicare* decision itself.  *See, e.g.*, *Omnicare*, 575 U.S. at 183.  Plaintiff asserts that *Omnicare* itself did not "identify the phrase ['we expect'] as a precursor to an opinion." Opp. at 20.  But numerous courts have, not surprisingly, made clear—post-*Omnicare*—that "[s]tatements that express ***expectations*** for the future rather than presently existing, objective facts are also statements of opinion." *Conagra*, 495 F. Supp. 3d at 648–49 (quoting *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 406 (S.D.N.Y. 2018) (emphasis added)).[9]

---

[8] Nor is there any contradiction between the fact that the ***general*** trend of the pandemic "pull forward" was well-known (Mot. at 18), but that Weber did not have the ***specific*** data that supposedly quantified the particular impact of any "pull forward" on its replacement sales.  *See* Opp. at 17–20.

[9] *See also, e.g.*, *Vallabhaneni v. Endocyte, Inc.*, 2016 WL 51260, at *16 (S.D. Ind.  Jan. 4, 2016) (holding a "we expect" statement to be an "opinion statement [that] is not materially misleading" under *Omnicare*); *Quinones v. Frequency Therapeutics, Inc.*, 2023 WL 2693901, at *10–11 (D. Mass. Mar. 29, 2023) (same); *In re Dynagas LNG Partners LP Sec. Litig.*, 504 F. Supp. 3d 289, 317 (S.D.N.Y. 2020) (same); *Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 227 (S.D.N.Y. 2018) (Statements such as "we still expect . . . high single-digit growth" are "opinion statements subject to the *Omnicare* test.").

As to *Omnicare*'s elements, Plaintiff does not dispute that Weber honestly and reasonably held the opinions at issue. *Conagra*, 495 F. Supp. 3d at 650 (quoting *Omnicare*, 575 U.S. at 186, 189). Nor could he, because Plaintiff himself pled that Weber's opinions about consumer behavior and market trends were supported by available third-party data. AC ¶ 73 (citing survey reflecting consumer expectations of increased grill use).

Instead, Plaintiff asserts that the operative statements omitted known material facts that, if disclosed, would alter "what a reasonable investor, reading the statement fairly and in context would take from the statement itself." *Omnicare*, 575 U.S. at 176. But this omission theory fails for the same reasons set forth above: (1) that the false comparison offered by Plaintiff in his Complaint does not support his theory (*see supra* Section I.B); (2) that the Registration Statement exhaustively disclosed the risks that pandemic era sales would not be sustainable (*see supra* Section I.A); and (3) that there was no duty to disclose any additional information or data (*see supra* Section I.C).

Plaintiff cites *Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp.*, 2018 WL 1071442, at *4 (N.D. Ill. Feb. 27, 2018), to suggest that reasonable investors would not view Weber's projections "as uncertain" because they were purportedly "coupled with defendants' assurances" to the contrary. Opp. at 21. But in *Allstate*, the court identified numerous "assurances"—including how defendants "had analyzed this [issue] to death"—that would lead investors to believe that "defendants had comprehensively analyzed internal and external data" before issuing a statement. *Allstate Corp.*, 2018 WL 1071442, at *4. Plaintiff does not and cannot identify any such "assurances" here. To the contrary, Weber's cautious optimism was accompanied by plain and frequent reminders that Weber was experiencing "challenges in forecasting demand" that made it "difficult to estimate future results," which meant that

pandemic-era growth "may not be sustainable and may not be repeated in future periods," among
other disclosures.  Mot. at 6–7 (citing Ex. A at 38–39, 42).

**B.      Each of the Alleged Misstatements is Protected by the Bespeaks Caution
           Doctrine**

As set forth in the Motion, the bespeaks caution doctrine is a tailor-made protection for
cautiously worded statements like these, where (1) all of the statements are forward-looking and
(2) the Registration Statement provided detailed, specific, and meaningful warnings that the
predictions may not come to fruition.  Mot. at 20–21 (citing, *inter alia*, *Stavros v. Exelon Corp.*,
266 F. Supp. 2d 833, 842 n.6 (N.D. Ill. 2003)).

Plaintiff responds generically that the bespeaks caution doctrine is "narrow," and "applies
only in the most limited of circumstances."  Opp. at 21–22.  But Plaintiff does little to support
his assertion that it does not apply here.  The Opposition does not dispute that the statements at
issue are all forward-looking.  And the Registration Statement's risk disclosures are replete with
cautionary language that "addressed precisely the risks that Plaintiffs allege" (*City of Omaha v.
Evoqua*, 450 F. Supp. 3d 379, 398 (S.D.N.Y. 2020)), and were "tailored to the specific future
projections, estimates or opinions" at issue (*Harden v. Raffensperger, Hughes & Co.*, 65 F. 3d
1392, 1404 (7th Cir. 1995)).[10]

Plaintiff contends that Defendants "invalidated the cautionary language . . . by explicitly
contradicting it elsewhere in the registration statement" (Opp. at 22–23), but that assertion finds

---

[10] Each of the cases Plaintiff cites in his efforts to argue that the bespeaks caution does not apply
here is inapposite.  For example, Plaintiff cites *Makor Issues & Rights, Ltd. v. Tellabs Inc.* for the
proposition that "a mixed present/future statement is not entitled to the safe harbor with respect to the part
of the statement that refers to the present." 513 F. 3d 702, 705 (7th Cir. 2008).  But nowhere does
Plaintiff explain why Weber's plainly forward-looking statements would ever be treated as "mixed
present/future statement[s]," or how this proposition otherwise has any relevance here. *Id.*  And unlike in
*Takara Tr. v. Molex Inc.*, 429 F. Supp. 2d 960, 974 (N.D Ill. 2006), there is no question that Weber's "we
believe" and "we expect" statements were the types of "forecasts, opinions, or projections" (*Harden*, 65
F. 3d at 1404) that deserve the bespeak caution doctrine's protection.

no support in the Registration Statement itself. Plaintiff claims that Weber represented "that demand would 'continue in the future.'" *Id.* at 23. That specific language related to demand, however, appears nowhere in the Registration Statement. Weber's actual statements (e.g., that it "expect[ed] these **consumer shifts** [toward backyard and outdoor leisure] to continue in the future" (AC ¶ 106 (emphasis added))) are not at all inconsistent with the cautionary language (e.g., demand "may not be sustainable" (Ex. A at 42)) that triggers bespeaks caution protection. Likewise, Plaintiff asserts again that he believes Weber should have disclosed the alleged "pull forward," which purportedly "seriously undermin[ed] the accuracy of the forecast." Opp. at 22. But as set forth above, the Registration Statement exhaustively disclosed risks about the sustainability of post-pandemic demand. *See supra* Section I.A. That amply satisfies the meaningful cautionary language required by the bespeaks caution doctrine.

### C.    Each of the Challenged Disclosures Was a Classic Expression of Inactionable Corporate Optimism

All three of the challenged statements are precisely the type of "loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor" would rely on them. *Van Noppen v. InnerWorkings, Inc.*, 136 F. Supp. 3d 922, 940 (N.D. Ill. 2015). In his Opposition, Plaintiff ignores the language of the actual statements at issue. Opp. at 24. Instead, Plaintiff focuses on **other statements**—about then-current "record-breaking sales and demand" that Weber was "generating"—and contends that those statements would have been "material" to investors. *Id.* But these statements are irrelevant to the question on this Motion because Plaintiff does not contend that they are false or misleading.

By contrast, Plaintiff offers no explanation for how the generalized forward-looking opinions that are actually at issue on this Motion could have been meaningful to investors. *See* AC ¶¶ 105–110. That is because the challenged statements are classic corporate optimism—

precisely the sort of indefinite predictions that are "devoid of any substantive information" and "not of the type subject to objective verification." *Searls v. Glasser*, 64 F.3d 1061, 1066 (7th Cir. 1995); *see also City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F. 4th 592, 595 (7th Cir. 2021). As Weber set forth in the Motion, statements like this are properly dismissed as inactionable puffery. Mot. at 21–22 (collecting cases).[11]

## III. PLAINTIFF'S CLAIMS UNDER ITEMS 303 AND 105 ALSO FAIL

In his Opposition, Plaintiff continues to mistakenly base his Section 11 claim on supposed violations of Items 303 and 105 of Regulation S-K. Opp. at 10–12. To the extent the Court even considers this theory at all (*see* Mot. at 24 n.5), it should reject it for suffering the same flaws that doom his general fraud-by-omission theory: Weber actually disclosed the risks and trends Plaintiff claims it omitted, and nothing more was required. *See supra* Section I.A.

Plaintiff cannot state a claim based on Item 303 by relying on his implausible allegation that at the time of the IPO, Weber knew that as a result of a "pull forward" trend, replacement sales had surged to an unprecedented and unsustainable level. There is no support for this contention, particularly given that Plaintiff does not and cannot allege that the purportedly high percentage of replacement sales stated by UBS—even if accepted as true—was different at all, much less materially so, from the percentage before 2020-2021. As a matter of logic, one data point can never make a trend. Nor has Plaintiff alleged that demand itself was actually softening as of the time of the Registration Statement in a way that would constitute a trend or require

---

[11] Plaintiff's attempts to distinguish cases that have dismissed near-identical language as puffery cannot be credited. *See* Opp. at 24. Once more, Plaintiff asserts his pull-forward-of-replacement-sales theory to argue that Weber's statements arise in some distinguishable "context" that "suggests strongly that they are 'material.'" *Id.* at 25. But "the context within which [Weber's] statements appeared" (*id.* at 24–25)—surrounded by pages of specific, pandemic-oriented risk disclosures—only confirms that these generic statements are mere puffery.

disclosure. *See* Mot. at 14–19, 24.[12]  In other words, the allegedly omitted information was not a "trend or uncertainty" and thus it provides no basis for liability for that reason alone.

Moreover, even if a single data point could constitute a trend (which it obviously cannot), Plaintiff has not plausibly alleged that Weber actually knew about that data point.  *See Conagra,* 495 F. Supp. 3d at 647–48 ("Item 303 requires the registrant to disclose only those trends, events, or uncertainties that it actually knows of" at the time of the IPO, and "[i]t is not enough that it should have known of the trend, event or uncertainty." (internal quotation marks omitted)).  As noted above, Plaintiff does not dispute that the statistic came from third-party UBS research published ***after the IPO***.  *See* Ex. B (UBS report dated August 30, 2021—more than three weeks after the IPO).  Nor can Plaintiff contest that, in the ordinary course of business, Weber would not have any basis to know whether a particular sale went to a customer buying a replacement or new grill given the supply chain of the overwhelming majority of Weber's typical sales.  *See* Ex. A at 4, 15 (explaining that most of Weber's sales are made through wholesalers, not directly to consumers); *see also* AC ¶ 56 (conceding that "Weber primarily sells its inventory to retailers who will then sell it to end consumers").  Plaintiff does not dispute any of this, but instead resorts

---

[12] Plaintiff's cases are all easily distinguishable because they involve fact patterns where Defendants either (1) failed to fully disclose conduct in which they had already engaged as well as the obvious consequences thereof, or (2) opted not to disclose known and clearly defined trends that were necessarily going to impact performance.  Opp. at 11 (citing *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 385-87 (N.D. Cal. 2020); *Mingbo Cai v. Switch, Inc.*, 2019 WL 3065591, at *5 (D. Nev. July 12, 2019); *In re GoHealth, Inc. Sec. Litig.*, 2022 WL 1016389, at *6 (N.D. Ill. Apr. 5, 2022); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 511 (S.D.N.Y. 2013)).  By contrast, in similar situations, courts have routinely found that disclosures equivalent to what Weber provided investors satisfied Registration S-K.  *See Susie Ong v. Chipotle Mexican Grill, Inc.*, 2017 WL 933108, at *11 (S.D.N.Y. Mar. 8, 2017) (Item 303-based claim failed where company "provided disclosures regarding its risks that were company-specific and related to the direct risks it uniquely faced"); *Golubowski v. Robinhood Mkts., Inc.*, 2023 WL 1927616, at *7–8 (N.D. Cal. Feb. 10, 2023) (Items 303-based claim failed where risk disclosures expressly addressed potential declines in metrics on which Plaintiffs focused their allegations and the "trend" identified had not materialized as of the date of the IPO as "an 'observed pattern that accurately reflect[ed] persistent conditions of the particular registrant's business environment'" (internal citation and emphasis omitted)).

to speculation based on generalized quotations taken out of context in earnings calls post-dating the IPO. *See* Opp. at 17–18. But none of those generalized earnings call statements suggested that Weber tracked in real time or had access to internal data on the metric cited in the UBS report. *See* Mot. at 16 n.2.

With respect to Item 105, Weber's robust and repeated disclosures covered all the factors that made an investment in Weber speculative or risky—just as Item 105 requires. *See supra* Section I.A. As discussed above, Plaintiff hardly touches on any of the risk warnings at all— going as far as abandoning his claims on the two statements related to risks altogether—to avoid contending with the ways in which these disclosures undermine Plaintiff's claims for securities fraud, including under Item 105. Nor can Plaintiff undermine these disclosures by saddling them with the blanket label of "general warnings." Opp. at 12; AC ¶ 113. Weber's disclosures were robust, specific, and directly in line with what courts routinely hold sufficiently satisfy Item 105. Mot. at 24–25 (collecting cases).

## IV. PLAINTIFF'S SECTION 15 CLAIMS FAIL BECAUSE HE HAS NOT STATED AN UNDERLYING CLAIM FOR SECURITIES FRAUD

Plaintiff does not dispute that his Section 15 claims must be dismissed if he fails to state a Section 11 claim. Opp. at 25. Accordingly, because Plaintiff's Section 11 claims are deficiently pled, his Section 15 claims must likewise be dismissed. *See* 15 U.S.C. § 77o(a).

## CONCLUSION

For the reasons set forth above and in the Motion, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated:   August 4, 2023

Respectfully submitted,

/s/ *Amy C. Andrews*

**RILEY SAFER HOLMES & CANCILLA LLP**
Amy C. Andrews
Matthew Crowl
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
Tel: (312) 471-8756
aandrews@rshc-law.com
Tel: (312) 471-8720
mcrowl@rshc-law.com

/s/ *Edmund Polubinski III*

**DAVIS POLK & WARDWELL LLP**
Edmund Polubinski III
Brian M. Burnovski
Patrick W. Blakemore
Adam M. Greene
Cortnay Cymrot
Christopher Johnson
450 Lexington Ave.
New York, New York 10017
Tel: (212) 450-4000
edmund.polubinski@davispolk.com
brian.burnovski@davispolk.com
patrick.blakemore@davispolk.com
adam.greene@davispolk.com
cortnay.cymrot@davispolk.com
christopher.johnson@davispolk.com

*Attorneys for Defendants Weber Inc., Chris
Scherzinger, William Horton, Marla Kilpatrick,
Kelly D. Rainko, Elliott Hill, Martin McCourt,
Melinda R. Rich, James C. Stephen, Susan T.
Congalton and Magesvaran Suranjan*

19

/s/ *Joseph L. Motto*

**WINSTON & STRAWN LLP**
Joseph L. Motto
Thomas M. Leinenweber Jr.
35 W. Wacker Drive
Chicago, Illinois 60601
Tel: (312) 558-3728
jmotto@winston.com
tleinenweber@winston.com

*Attorneys for Defendants Goldman Sachs & Co.*
*LLC, BofA Securities, Inc., J.P. Morgan Securities*
*LLC, BMO Capital Markets Corp., Citigroup*
*Global Markets Inc., UBS Securities LLC, Wells*
*Fargo Securities, LLC, KeyBanc Capital Markets*
*Inc., Academy Securities, Inc., Cabrera Capital*
*Markets LLC, Siebert Williams Shank & Co, LLC,*
*and Telsey Advisory Group LLC*

/s/ *Kevin Orsini*

**CRAVATH, SWAINE & MOORE LLP**
Kevin Orsini
825 8th Avenue
New York, New York 10019
Tel: (212) 474-1596
korsini@cravath.com

*Attorneys for BDT Capital Partners, LLC*