IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT MICHALSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WEBER INC., CHRISTOPHER SCHERZINGER, WILLIAM HORTON, MARLA KILPATRICK, KELLY D. RAINKO, ELLIOTT HILL, MARTIN MCCOURT, MELINDA R. RICH, JAMES C. STEPHEN, SUSAN T. CONGALTON, MAGESVARAN SURANJAN, GOLDMAN SACHS & CO. LLC, BOFA SECURITIES, INC., J.P. MORGAN SECURITIES LLC, BMO CAPITAL MARKETS CORP., CITIGROUP GLOBAL MARKETS INC., UBS SECURITIES LLC, WELLS FARGO SECURITIES, LLC, KEYBANC CAPITAL MARKETS INC., ACADEMY SECURITIES, INC., CABRERA CAPITAL MARKETS LLC, SIEBERT WILLIAMS SHANK & CO., LLC, TELSEY ADVISORY GROUP LLC, AND BDT CAPITAL PARTNERS, LLC,<br><br>Defendant. | No. 1:22-cv-3966 |

<u>Memorandum Opinion and Order</u>

In this putative class action, lead plaintiff Mateusz Grudziaz alleges that defendants violated federal securities laws by misrepresenting and/or omitting material information from the registration statement and prospectus ("Registration

Statement") issued in connection with the initial public offering ("IPO") of defendant Weber, Inc., a manufacturer of barbecue grills and related products, in August of 2021. Plaintiff claims that all defendants violated Section 11 of the Securities Act because the Registration Statement contained inaccurate, false, and/or materially misleading statements. He also claims that the individual defendants and BDT Capital Partners violated Section 15 of the Securities Act because they had the authority to control the contents of the Registration Statement and failed to prevent its issuance or ensure its accuracy. Defendants move to dismiss the Amended Complaint in its entirety. For the reasons that follow, the motion is granted.

I.

According to the Amended Complaint, defendants took Weber public on the heels of a period of record-breaking sales fueled by widespread stay-at-home orders during the Covid-19 pandemic, leading investors to believe that market trends toward increased at-home and outdoor cooking would yield continued sales growth even after the pandemic abated. But defendants allegedly failed to disclose data showing just the opposite: that the company's ballooning pandemic sales were driven by a "pull-forward" phenomenon in which existing Weber customers made "replacement purchases" during the pandemic (i.e., they replaced old grills

with new ones) earlier than they would have in the absence of pandemic conditions. These sales were, by definition, temporary, and would not continue after the pandemic subsided, making the company's statements suggesting that the company's increased sales were attributable to consumer trends "towards backyard and outdoor leisure," and that those trends were likely to support continued growth into the future, materially false or misleading.

Weber closed its IPO on August 9, 2021, with shares of Class A common stock sold at an offering price of $14.00 per share. After climbing to $16.95 per share later that month, share prices became volatile. According to plaintiff, share prices fell as analysts "slowly learn[ed] about the Covid-19 pulled-forward demand" of the preceding fiscal years. Am. Compl. at 24. By September 14, 2021, share prices had dropped below the initial offering price and were selling for $13.92. Weber's sales likewise took a turn for the worse, and the company missed its revenue targets in the second quarter of 2022. *Id.* at ¶ 90. Weber's revenues ultimately fell twenty percent in fiscal year 2022. *Id.* Share prices crashed accordingly, closing at $6.21 per share on August 1, 2022. *Id.* at ¶ 97. Plaintiff claims that he

3

and the absent class members suffered significant losses as a result.[1]

## II.

The Securities Act of 1933 requires issuers of securities sold in interstate commerce to make a "full and fair disclosure of information" relevant to a public offering. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 178 (2015). Section 11 of the Act creates a private right of action for purchasers if the registration statement filed with the SEC in conjunction with such an offering "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). "Section 11 thus creates two ways to hold issuers liable for the contents of a registration statement—one focusing on what the statement says and the other on what it leaves out." *Omnicare*, 575 U.S. at 179.

---

[1] Plaintiff describes, under the heading "Insider Corporate Transactions as Weber Pushes Forward with IPO," a number of transactions the company allegedly engaged in to finance the IPO and to pay dividends to pre-IPO shareholders. Then, under the heading "Post-IPO Events," he recounts that less than a year and a half after closing the IPO, Weber reversed course and announced a deal with BTD Capital to "go private," in which BTD Capital would buy back the company for just $8.05 per share. Because nothing in the parties' briefing suggests that these facts are relevant to plaintiff's claims or to defendants' motion, I omit them from my factual summary.

4

In a section of the Amended Complaint captioned, "Materially False and Misleading Statements," plaintiff identifies excerpts of Weber's Registration Statement directed to Weber's historic growth rate and recent trends. In this connection, plaintiff cites the following passage:

> We have experienced growth in various economic environments and have benefited from lasting consumer shifts in behavior towards outdoor cooking, which is evidenced by our 10% revenue CAGR from 1980 to 2021. Our track record of growth is driven by our iconic brand, massive installed base of loyal enthusiasts, and approximately 26% of our revenues being comprised of accessories and consumables all of which support a predictable, recurring revenue model. More recently, our significant investments in Weber Connect, Weber.com, and ***the ongoing consumer shifts towards backyard and outdoor leisure have further enhanced our growth profile. We expect these consumer shifts to continue in the future***.

Am. Compl. at ¶ 106 (quoting Registration Statement, ECF 80-1 at 148) (emphasis in Amended Complaint). The Amended Complaint also cites a passage from the Registration Statement that reads:

> [t]he COVID-19 environment has encouraged consumers to cook at home and enjoy the benefits of outdoor grilling, creating increased demand for our grills and accessories, and ***we expect to continue to benefit from these trends even after the pandemic recedes***.

*Id*. at ¶ 107 (quoting Registration Statement, ECF 80-1 at 108) (emphasis in Amended Complaint). The text in bold is misleading, plaintiff claims, because defendants omitted that Weber's apparent "growth" in 2020 and 2021 was "primarily caused by the COVID pandemic accelerating—or "pulling forward"—routine

5

replacement purchases that were expected to occur in subsequent years." *Id*. at ¶ 74.

Defendants' alleged failure to disclose this "pull-forward" phenomenon was significant, plaintiff claims, because "[h]istorically, replacement purchases did not account for a significant percentage of Weber's annual sales." *Id*. at ¶ 58. According to plaintiff, the Registration Statement disclosed that Weber's annual replacement rate was around 6.67%—a percentage plaintiff derives from the company's estimated "installed base" of thirty million grills in the United States, which were "being replaced at a rate of over 2 million units per year." *Id*. at ¶ 109 (quoting Registration Statement). But plaintiff claims that according to a report issued by defendant UBS on August 1, 2022, "over 60% of sales for Weber during Covid (FY'20 and '21) were replacement sales, and in FY'20 over 70% of sales were replacement sales." *Id*. at ¶ 74. By plaintiff's lights, because "[t]he rate of replacement purchases during COVID was materially different than the 6.67% figure provided to investors," defendants' omission of the sales figures reported by UBS made statements suggesting that Weber's "strong sales during COVID" were "driven by improved industry trends or demand" materially false or misleading. *Id*. at ¶ 110. Plaintiff adds in his opposition brief that the same omission made the statement,

6

"our business is not dependent on replacements" false or misleading. Opp., ECF 85 at 8, 15-16 (quoting Registration Statement).

The Amended Complaint also alleges that certain statements in the Registration Statement concerning "risk factors" were false or misleading. In this connection, plaintiff points to the following excerpts from the Registration Statement:

> Challenges in forecasting demand, which we have encountered during the COVID-19 pandemic, can also make it difficult to estimate future results of operations and financial condition from period to period. ***A failure to accurately predict the level of demand for our products*** or manage product inventory in an effective and efficient manner could adversely impact our profitability or ***cause us not to achieve our expected financial results***.

Am. Compl. at ¶ 111 (quoting Registration Statement, ECF 80-1 at 38) (emphasis in Amended Complaint); and

> [A] prolonged or worsened COVID-19 pandemic could lead to the shutdown or material reduction of grill manufacturing, repair and replacement as well as a reduction in residential construction and remodeling activity, which could have a material adverse effect on our business, financial condition, results of operations and cash flows. ***While we have experienced higher demand in our grill business as consumers sheltered in place and have spent more time at home as a result of the COVID-19 pandemic, such growth may not be sustainable and may not be repeated in future periods.*** Furthermore, even if growth in demand continues, we may not be able to meet that demand due to production and capacity challenges.

*Id.* at ¶ 112 (quoting Registration Statement, ECF 80-1 at 42) (emphasis in Amended Complaint). Plaintiff alleges that the

7

highlighted statements in these excerpts, too, were false and/or misleading because defendants "cautioned investors about the level of demand it had experienced during COVID" without disclosing the "pull-forward" phenomenon described above.

Defendants' first argument for dismissal is that plaintiff cannot state a claim because the Registration Statement disclosed the very information plaintiff faults defendants for omitting. This argument has merit. In fact, in the allegations above concerning the Registration Statement's disclosure of risk factors, the Amended Complaint quotes passages facially disclosing that the "growth" Weber achieved from a spike in sales during the Covid pandemic "may not be sustainable." True, the Registration Statement did not use the phrase "pull-forward" to characterize the surge in sales during the stay-at-home phase of the pandemic. But plaintiff cannot reasonably contend, given the language the Registration Statement *did* use to describe its sales during that period—including statements: 1) acknowledging that the company experienced "higher demand in our grill business as consumers sheltered in place and spent more time at home," 2) expressly warning investors that the increase in demand "may not be sustainable and may not be repeated in future periods," and 3) reiterating that "[t]he economic effects of the COVID-19 pandemic could continue to affect demand for our products in the

8

foreseeable future"—that defendants concealed the pandemic's effect on its sales results or misled investors by suggesting that the company's future results were likely to mirror those the company experienced in fiscal years 2020 and 2021. *See Robeco Cap. Growth Funds SICAV – Robeco Glob. Consumer Trends v. Peloton Interactive, Inc.,* No. 21CV9582ALCOTW, 2023 WL 2711342, at *15 (S.D.N.Y. Mar. 30, 2023) ("*Peloton*") (statements acknowledging that the "unprecedented demand" during Covid closures was not expected to continue into the future gave "the investing public the information it needed to make an informed decision" about the company's stock).

Plaintiff insists that *Peloton* supports his theory rather than defendants', since in that case, unlike in this one, the defendants "explicitly told the public that demand for Peloton's products would be returning to pre-COVID levels after the surge in demand it had seen during COVID." Opp., ECF 85 at 14 (quoting *Peloton* 2023 WL 2711342, at *14). Presumably, plaintiff is zeroing in on the distinction between the *Peloton* defendants' affirmative statement that sales "*would be* returning to pre-COVID levels" and defendants' more equivocal statement here that sales "*may not be* sustainable" post-pandemic. But plaintiff ignores a critical factual distinction between the two cases: in *Peloton*, the plaintiff alleged that by the time the defendants

9

made the challenged statements, demand for the company's products had "*already begun to decline*," and its sales personnel were already "*regularly missing their sales quotas*." *Id*. at *2 (emphasis added). Here, by contrast, plaintiff does not allege that by the time the Registration Statement was issued, demand for Weber's products had *already* begun to decline or that its growth in sales had *already* started to stagnate.[2] That these developments would materialize remained a possibility, not a certainty.

Indeed, plaintiff acknowledges that while "some companies that had enjoyed increased earnings from the 'pull forward' began

---

[2] The remaining cases plaintiff cites are generally distinguishable for similar reasons. *See, e.g.*, *Nayani v. LifeStance Health Grp., Inc.*, No. 22-CV-6833 (JSR), 2023 WL 3260260, at *3 (S.D.N.Y. May 4, 2023) (mental health firm's disclosure of historical clinician retention rate while holding back new data it "already possessed" showing that clinician retention had declined could be misleading); *In re Honest Co. Sec. Litig.*, 615 F. Supp. 3d 1149, 1156 (C.D. Cal. 2022), (concluding that the complaint "include[d] facts from which it may be inferred that Honest management knew demand was easing at the time of the IPO," and that consumer stock-up of Covid-related products "was observable at the time of the offering documents"); *Murphy v. Precision Castparts Corp.*, No. 3:16-CV-00521-SB, 2017 WL 3084274, at *2 (D. Or. June 27, 2017) (company "create[d] the impression of a sustainable demand for [its] products" without disclosing its practice of "aggressively pulling in" future sales—a practice that left a "hole" in its future targets and required the company to pull in "progressively higher numbers"). None of these situations is comparable to the scenario here, where plaintiff does not claim that Weber's sales had begun declining prior to the IPO, and defendants expressly cautioned investors that its pandemic-related sales surge may be unsustainable.

10

to revert to average and below-average earnings due to an exhausted customer base," others "continued to experience above-average sales." Am. Compl. at ¶ 67.

> For example, Home Depot experienced record-breaking quarters between April 2020 and April 2021 with double-digit same-store sales growth. While its pace of growth slowed in late-2021, sales remained strong in part [due] to a "lasting increase in home-improvement demand."

*Id*. These allegations reinforce that even assuming Weber's Covid-era sales benefited from a "pull-forward" effect, the company's subsequent decline in sales was not a foregone conclusion. It was a possibility, to be sure; and that possibility is precisely what the Registration Statement disclosed.

The Registration Statement is replete with warnings about the uncertainty of Weber's operations and growth post-Covid. For example, it expressed optimism that studies showing "fundamental shifts in consumer behavior," which included an increase in "cooking at home," would continue to provide "positive tailwinds to our industry," but it cautioned that the pandemic "accelerated" these trends, thus alerting investors that the unprecedented gains the company had achieved while consumers were unable or reluctant to eat out may not be representative of its future performance. ECF 80-1 at 16. In a similar vein, while the Registration Statement noted that the company expected "to

11

continue to benefit from these trends even after the pandemic recedes," in the very next statement, it cautioned that the pandemic "may also have the effect of heightening many of the risks described in 'Risk Factors' in this prospectus." *Id*. at 108. *See also id.* at 41 (explaining that the pandemic could "exacerbate" the risk that the company would be unable to "acquire new customers, retain existing customers or grow or maintain our share of our current key markets," among other risks). Read as a whole, the Registration Statement laid out how both the opportunities and the challenges of the Covid-19 pandemic had affected the company's 2020 and 2021 results and made clear that the post-pandemic market and demand for Weber's products was uncertain.

At bottom, plaintiff faults defendants for failing to disclose a single metric concerning Weber's pandemic-era sales results: the percentage of its worldwide revenues that were attributable to Weber's replacement sales.[3] But there are several

---

[3] According to plaintiff's allegations, defendant UBS reported these percentages nearly a year after the IPO. While I agree with defendants that the Amended Complaint's factual allegations do not raise a reasonable inference that defendants knew these statistics at the time the Registration Statement was issued, defendants' knowledge is presumably irrelevant since scienter is not an element of plaintiff's claims. *See Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983). At all events, I need not reach this question since dismissal of the Amended Complaint is appropriate regardless of whether defendants were aware of the statistics UBS reported.

flaws in plaintiff's theory that this omission made the Registration Statement materially false or misleading. First is the basic disconnect between the statistics plaintiff compares: on the one hand, he cites the 6.67 percent "replacement rate," which represents the percentage of *all Weber grills installed in the United States that are replaced annually* (let us call this the "U.S. replacement rate"); and on the other, he cites the sixty to seventy percent of *Weber's worldwide revenues* that were reportedly derived from replacement sales in 2020 and 2021 (the "percent-of-worldwide-revenue" metric). As defendants observe, these statistics measure entirely different things, and plaintiff's apples-to-oranges comparison does not support his allegation that they "materially contradicted" one another. *See* Am. Compl. at ¶ 110.

Second, to the extent plaintiff's theory is not that the statistics are inherently irreconcilable but rather that the non-disclosure of the percentage-of-worldwide-revenues metric made the disclosure of the U.S. replacement rate (and, as plaintiff adds in his response brief, the statement, "our business is not dependent on replacements") misleading "by creating the false impression that replacement purchases were relatively unimportant" to Weber's business, this theory cannot be squared with the Registration Statement's numerous references

13

to its "brand loyalists" and the importance of its repeat customers. Far from concealing the fact that replacement sales were a significant part of its business, the company touted its "powerful recurring revenue model through repeat grill sales" and its "massive community of loyal Weber enthusiasts," including "families [who] have passed down their affinity for Weber from one generation to the next[.]" ECF 80-1 at 9, 10, 106. While it may be that investors "would have been better informed" about the role of replacement sales in Weber's bottom line had the specific percent-of-worldwide-revenues statistics been disclosed, Section 11 does not require that level of granularity. *See Fulton Cnty. Employees' Ret. Sys. v. MGIC Inv. Corp.*, No. 08-C-0458, 2010 WL 601364, at *17 (E.D. Wis. Feb. 18, 2010), *aff'd sub nom. Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*, 675 F.3d 1047 (7th Cir. 2012) (statement that financial services firm "maintains substantial liquidity to cover margin calls" was not misleading in view of accompanying disclosure that the firm could not "guarantee that all liquidity required will in fact be available"; Section 11 did not require disclosure of specific margin calls or their effect on the firm's reserves).

In short, the Registration Statement, read as a whole, facially belies plaintiff's claim that defendants made materially false or misleading statements concerning Weber's

14

sales results during the Covid pandemic and the likelihood that its surge in sales would continue into the future. Because my conclusion in this respect suffices to warrant dismissal of the Amended Complaint, I need not examine in detail the multitude of remaining arguments defendants raise in support of dismissal. Nevertheless, I note that each of the specific statements plaintiff identifies as misleading bears the classic hallmarks of non-actionable opinions or projections about how market trends and consumer behavior could affect business going forward.[4] Indeed, defendants offer compelling arguments and authorities in support of their assertion that the statements are non-actionable opinions under the analysis of *Omnicare* and that they meet the criteria for applying the bespeaks caution doctrine. None of the cases plaintiff cites in response, including, among others, *Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp.*, 2018 WL 1071442, (N.D. Ill. Feb. 27, 2018), *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165 (2d Cir. 2020), and *Hedick v. The Kraft Heinz Company*, No. 19-CV-1339, 2021 WL

---

[4] The challenged statements are: "ongoing consumer shifts toward backyard and outdoor leisure have further enhanced our growth profile. We expect these consumer shifts to continue in the future," Am. Compl. ¶ 106; "we expect to continue to benefit from [Covid-related] trends even after the pandemic recedes," *id*. at ¶ 107; and "our industry will see continued resiliency through the business cycle and growth driven by increasing demand for outdoor spaces," *id*. ¶ 109.

15

3566602 (N.D. Ill. Aug. 11, 2021), rebuts defendants' arguments in this connection.

### III.

For the foregoing reasons, defendants' motion to dismiss is granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: September 27, 2023